Winston HOLMES, Petitioner,

v.

George BARTLETT, Superintendent,
Respondent.

No. 91 Civ. 4644 (DNE).

United States District Court,
S.D. New York.

Jan. 15, 1993.

Winston Holmes, pro se.

Robert T. Johnson, Dist. Atty., New York City (Billie Manning, Asst. Dist. Atty., of counsel), for respondent.

## OPINION & ORDER

EDELSTEIN, District Judge:

Mr. Winston Holmes has petitioned for a writ of habeas corpus. For the reasons stated below, all claims in the petition are denied except the one based upon an allegedly improper ruling at trial that restricted defense counsel's ability to cross-examine a witness. The merits of this claim will be reviewed in a subsequent order.

### Background

Mr. Holmes was convicted on October 28, 1977, in Supreme Court of the State of New York, Bronx County, of two counts of felony murder and two counts of manslaughter in the first degree. The Court sentenced petitioner to terms of 25 years to life on the felony murder counts and 8⅓ years to 25 years on the manslaughter counts, all terms to run concurrently. This conviction resulted from a retrial of petitioner, who, along with a co-defendant, Mr. Ernest Welcome, obtained a writ of habeas corpus in the Southern District of New York that overturned his 1970 conviction. *See Holmes v. Bombard*, No. 76 Civ. 747 (VLB) (S.D.N.Y.1977). Mr. Welcome received a new trial because the trial court restricted his right to examine a witness concerning a Mr. Albert Cunningham's confession to the charged crimes. *See Welcome v. Vincent*, 549 F.2d 853 (2d Cir.), *cert. denied*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977). Noting that Mr. Holmes' application for collateral relief presented the precise issue decided by the Court of Appeals in *Welcome*, Honorable Vincent L. Broderick granted petitioner's application. On retrial, Mr. Welcome was acquitted and, as noted, Mr. Holmes was convicted of four counts of homicide. Petitioner's other co-defendant, Mr. Charles Gale, also successfully obtained federal collateral relief, but the Second Circuit later overturned this decision. *Gale v. Harris*, 450 F.Supp. 375 (S.D.N.Y.), *rev'd*, 580 F.2d 52 (2d Cir.1978), *cert. denied*, 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979).

Petitioner appealed his conviction to the Appellate Division, First Department, which affirmed the conviction without comment. *See People v. Holmes*, 75 A.D.2d 725, 427 N.Y.S.2d 894 (1st Dep't 1980). The New York Court of Appeals denied petitioner leave to appeal. *See People v. Holmes*, 51 N.Y.2d 774, 432 N.Y.S.2d 1035, 412 N.E.2d 388 (1980).

On December 19, 1989, petitioner unsuccessfully sought collateral relief, in the form of a writ of *coram nobis*, from the Appellate Division, First Department, due to ineffective assistance of counsel. In addition, petitioner has sought federal collateral relief on two prior occasions. In his first federal petition, Mr. Holmes sought relief because: (1) he was the subject of an uncounselled lineup, which allegedly tainted in-court identifications; (2) the trial court improperly admitted evidence con-

cerning eyewitness identifications made at a *Wade* hearing and a prior trial; (3) petitioner was denied the right to cross-examine a Detective Farrell concerning Mr. Cunningham's allegedly exculpatory confession; and (4) petitioner was denied the right to cross-examine Detective Farrell on rebuttal concerning the employment of a Mr. James Branch. Honorable John E. Sprizzo dismissed the petition because petitioner had exhausted only ground three. *See Holmes v. LeFevre,* No. 81 Civ. 6580 (S.D.N.Y. Oct. 1, 1982).

Petitioner's second application for federal habeas relief was premised on: (1) improper in-court identifications; (2) denial of the right to cross-examine Detective Farrell concerning Mr. Cunningham's confession; (3) the trial court's supposed error in admitting evidence concerning eyewitness identifications made at a *Wade* hearing and a prior trial; and (4) the prosecutor's statement in a brief, submitted in federal court in connection with an action by Mr. Gale, that Mr. Cunningham's confession was true (the "Second Circuit brief claim"). After petitioner withdrew ground three as a basis for relief, Judge Sprizzo dismissed the petition due to petitioner's failure to exhaust ground one. *See Holmes v. LeFevre,* No. 85 Civ. 186 (S.D.N.Y. Jul. 31, 1985).

Petitioner now seeks a writ of habeas corpus on the grounds that: (1) he was denied the right to cross-examine Detective Farrell concerning Mr. Cunningham's confession; (2) the prosecutor indicated in a Second Circuit brief that Mr. Cunningham's confession was true; (3) petitioner was denied effective assistance of counsel on appeal because his attorney failed to advocate the claims listed as (4) and (5) in the present petition; (4) he was subjected to an uncounselled lineup, which led to improper in-court identifications; and (5) he was denied a speedy trial because he was not arraigned until January 5, 1970, eighteen months after his return to New York on a fugitive warrant.

This matter was referred to Magistrate Judge Kathleen A. Roberts, who issued a Report and Recommendation dated June 4, 1992, in which she recommended dismissing the petition under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), due to failure to exhaust state remedies. Magistrate Judge Roberts reasoned that petitioner has filed two previous petitions seeking writs of habeas corpus, both of which, like the present petition, asserted that his conviction resulted from impermissible in-court identifications. Both prior petitions were dismissed because petitioner had failed to exhaust this claim by presenting it to New York State courts. The Second Circuit also found that petitioner had failed to exhaust this claim in an order dated May 14, 1987. Because petitioner has not alleged that he has presented the unexhausted claim to the state courts, Magistrate Judge Roberts found that the claim had not been exhausted and thus federal review was inappropriate. *See Rose,* 455 U.S. at 522, 102 S.Ct. at 1205.

Although petitioner has not filed objections to the Report and Recommendation, the Office of the District Attorney, Bronx County (the "D.A."), has filed objections. The D.A. asserts that Magistrate Judge Roberts erred in finding that petitioner had failed to exhaust state remedies. The D.A. acknowledges that Mr. Holmes never raised certain claims on direct appeal, and that due to this omission, petitioner has forfeited his right to present these claims to the New York State courts under Criminal Procedure Law § 440.10(2)(c). The D.A. reasons, however, that petitioner's procedural default, and the resulting inability to present these claims in a state tribunal, implies that these claims are deemed exhausted. The D.A. further contends that Mr. Holmes' application should be dismissed because he has abused the writ.

## *Discussion*

### A. Exhaustion of State Remedies

■ This Court agrees with the D.A. that petitioner has exhausted state remedies. Before a federal court may grant habeas relief to a state prisoner, the petitioner must first exhaust available state remedies. *See* 28 U.S.C. § 2254(b)-(c); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Irvin v.*

*Dowd*, 359 U.S. 394, 404–05, 79 S.Ct. 825, 831–32, 3 L.Ed.2d 900 (1959). The exhaustion doctrine is not jurisdictional, but rather is based on principles of comity and federalism. *See Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989); *Rose*, 455 U.S. at 515, 102 S.Ct. at 1201. Exhaustion requires that petitioner give state tribunals a fair opportunity to decide any federal constitutional claims. *See Rose*, 455 U.S. at 515, 102 S.Ct. at 1201; *Picard*, 404 U.S. at 275, 92 S.Ct. at 512.

■■■ A fair opportunity consists of informing a state court of both the factual and legal premises of a constitutional claim. *See Castille*, 489 U.S. at 351, 109 S.Ct. at 1060; *Picard*, 404 U.S. at 276–77, 92 S.Ct. at 512–13; *Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir.1991). This requirement is satisfied if the legal and factual bases of a petitioner's federal habeas claim is the substantial equivalent of claims presented to the state court. *See County Court v. Allen*, 442 U.S. 140, 147–48 n. 5, 99 S.Ct. 2213, 2220 n. 5, 60 L.Ed.2d 777 (1979); *Picard*, 404 U.S. at 278, 92 S.Ct. at 513. Exhaustion requires presenting federal claims to the highest court of the state. *See Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990) (*per curiam*). "Adherence to exhaustion principles does not require a petitioner to raise his claims by citing chapter and verse of hornbook law; it simply mandates that the state be given a fair opportunity to hear the claim." *Blissett v. Lefevre*, 924 F.2d 434, 439 (2d Cir.) (quoting *Abdurrahman v. Henderson*, 897 F.2d 71, 73 (2d Cir.1990)), *cert. denied*, —— U.S. ——, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991).

The Second Circuit, in analyzing the exhaustion doctrine's fair opportunity requirement, has stated that:

> even if a particular matter is not treated generally as having constitutional dimension, if the courts of the state in question have themselves previously treated the fact pattern as appropriate for constitutional analysis, it would be unreasonable to suppose that they are not alert to constitutional considerations. Thus we consider that a defendant who cites state

[or federal] precedent that employs pertinent constitutional analysis has adequately put the state courts on notice of the constitutional thrust of his claim.

*Dave v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982) (*en banc*).

In this case, petitioner raised his claims based upon denial of a speedy trial and restrictive cross-examination on direct appeal. Moreover, he raised his claim based on ineffective assistance of appellate counsel in a petition for *coram nobis*. Accordingly, as Judge Sprizzo found, these claims are exhausted. Indeed, the D.A. concedes as much. *See Letter from Billie Manning, Assistant District Attorney, Bronx County, to Judge David N. Edelstein* (June 10, 1992) (on file in the Southern District of New York).

■■■ Thus, petitioner has exhausted all his claims except the one based upon allegedly improper in-court identifications and the Second Circuit brief claim. A habeas petition that contains both exhausted and unexhausted claims must be dismissed. *See Rose*, 455 U.S. at 522, 102 S.Ct. at 1205. Nevertheless, petitioner has satisfied the exhaustion requirement. The twin claims not presented to the state courts are deemed exhausted because petitioner is precluded from presenting these claims to any New York State court. *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991); *Twitty v. Smith*, 614 F.2d 325, 332 n. 9 (2d Cir.1979); *see also Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (*per curiam*) (exhaustion required unless futile to attempt to exhaust state remedies); *Dave*, 696 F.2d at 190 n. 3 (failure to comply with state procedural rules, which bars subsequent assertion of challenge to conviction, implies exhaustion of state remedies).

This conclusion follows from an analysis of New York's Criminal Procedure Law and New York's Rules of Practice. New York law prohibits petitioner from seeking more than one appeal in the New York Court of Appeals, and thus, petitioner has no further recourse to the Court of Appeals on direct appeal. *See* Rules of Practice, New York Court of Appeals § 500.-

10(a); *Grey,* 933 F.2d at 120; *Gatto v. Hoke,* 809 F.Supp. 1030, 1035 (E.D.N.Y. 1992); *see also Wilwording v. Swensen,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (*per curiam*) (claims exhausted upon presentation to state's highest court, and presentation to state courts on collateral review not required); *Brown v. Allen,* 344 U.S. 443, 448 n. 3, 73 S.Ct. 397, 403 n. 3, 97 L.Ed. 469 (1953) (same); *Pesina,* 913 F.2d at 54 (same).

Moreover, petitioner may not raise these claims on collateral review in the state system because he failed to raise them on direct appeal. *See* New York Criminal Procedure Law ("NYCPL") § 440.10(2)(c);[1] *People v. Cooks,* 67 N.Y.2d 100, 103–04, 500 N.Y.S.2d 503, 505, 491 N.E.2d 676, 677 (1986) (having unjustifiably failed to raise argument on appeal, defendant could not raise argument on collateral review); *People v. Skinner,* 154 A.D.2d 216, 552 N.Y.S.2d 932, 935 (1st Dep't) (same), *appeal denied,* 76 N.Y.2d 796, 559 N.Y.S.2d 1001, 559 N.E.2d 695 (1990); *see, e.g., Forman v. Smith,* 633 F.2d 634, 636 (2d Cir. 1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981). Petitioner clearly had notice of the factual predicate for these claims when he filed his direct appeal. The uncounselled lineup occurred before petitioner's first trial. While the prosecutor's Second Circuit brief was filed, at the latest, in 1978, petitioner's appeal was not decided until 1980. Accordingly, New York procedural rules plainly bar petitioner from litigating these claims in the New York State courts. *See, e.g., Gatto,* 809 F.Supp. at 1035.

Because New York courts would refuse to address petitioner's "non-exhausted" claims, it would be futile to compel him to present these claims in state court. "[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989); *see Teague v. Lane,* 489 U.S. 288, 297–98, 109 S.Ct. 1060, 1067–68, 103 L.Ed.2d 334 (1989); *Grey,* 933 F.2d at 120. Thus, petitioner's improper identification and Second Circuit brief claims are deemed exhausted in this situation.

**B. Procedural Default of Uncounselled–Lineup Claim and Claim Based upon Prosecutor's Second Circuit Brief**

While Mr. Holmes has exhausted available state remedies, he is not automatically entitled to a review on the merits of each of his claims in a federal tribunal. A procedural default occurs where a state criminal defendant fails to comply with a state procedural rule and thus in theory forfeits the right to a review on the merits in state court. A state court will address the merits, if at all, only as an alternative holding. In New York, for instance, a criminal defendant who unjustifiably fails to raise an issue on direct appeal is precluded from raising the issue on collateral review. *See* NYCPL § 440.10(2)(c).

The issue remains, however, whether a criminal defendant may raise such a defaulted claim in a federal habeas court. The Supreme Court has rejected such an option, except in limited circumstances. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). In *Wainwright,* the Supreme Court held that a federal habeas petitioner who has failed to comply with a state's procedural rule must show cause for the procedural default and consequent prejudice in order to obtain federal review of the defaulted constitutional claim. *See id.* at 87, 97 S.Ct. at 2506. Such a rule may be based on the desire to avoid rendering an advisory opin-

---

1. Section 440.10(2)(c) provides in relevant part that

> the court must deny a motion to vacate a judgment when ... [a]lthough sufficient facts appear on the record underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appel-

late review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

New York Criminal Procedure Law § 440.10(2)(c) (McKinney's 1983).

ion: When a state court rejects a claim for failure to comply with state rules, it relies on what is often an adequate and independent state ground.[2] *See Harris,* 489 U.S. at 260–61, 109 S.Ct. at 1041–42; *Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 2665, 91 L.Ed.2d 434 (1986). Accordingly, even if a federal court found constitutional error, on remand the state court could simply rely on the state ground to sustain the conviction, which would render the federal decision advisory, and thus, unconstitutional. *See Herb v. Pitcairn,* 324 U.S. 117, 125–26, 65 S.Ct. 459, 463–64, 89 L.Ed. 789 (1945); Richard W. Westling, *Comment: Advisory Opinions and the "Constitutionally Required" Adequate and Independent State Grounds Doctrine,* 63 Tul. L.Rev. 379, 386–87 (1989). A desire to show respect for the state judiciary may also underlie the rule espoused in *Sykes. See Michigan v. Long,* 463 U.S. 1032, 1040, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983); Terrance Sandalow, Henry v. Mississippi *and the Adequate and Independent State Ground: Proposals for a Revised Doctrine,* 1965 Sup.Ct.Rev. 187, 201 (1965). At any rate, this principle repeatedly has been affirmed. *See Sawyer v. Whitley,* — U.S. —, —, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992); *Harris,* 489 U.S. at 260–61, 109 S.Ct. at 1041–42; *Smith,* 477 U.S. at 537, 106 S.Ct. at 2667; *Murray v. Carrier,* 477 U.S. 478, 490–92, 106 S.Ct. 2639, 2646–48, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).

In assessing whether Mr. Holmes exhausted state remedies, this Court held that further recourse to state fora is futile because of New York's procedural scheme, and thus, petitioner has satisfied the exhaustion requirement. In addition, petitioner's failure to present his uncounselled lineup and Second Circuit brief claims to the New York courts constitutes a procedural default, and thus, an adequate and independent state ground, which bars federal merits review absent a showing of

cause and prejudice. *See Grey,* 933 F.2d at 121; *see, e.g., Smith,* 477 U.S. at 533, 106 S.Ct. at 2665 (federal habeas review precluded where state court rejected petitioner's state collateral claim because he failed to raise it on direct appeal, which under Virginia law—like New York law—implied that he forfeited the claim).

Indeed, the Supreme Court in *Teague v. Lane,* 489 U.S. 288, 297–98, 109 S.Ct. 1060, 1067–68, 103 L.Ed.2d 334 (1989), and the Second Circuit in *Grey,* sanctioned exactly such an analysis. In *Teague,* a state criminal defendant petitioning for federal habeas relief raised a *Swain* equal protection clause claim that he had never presented to the state tribunals. The Supreme Court found that under state law, the claim was procedurally barred, and thus, petitioner had exhausted his state remedies. The Court then found that under *Wainwright v. Sykes,* petitioner's procedural default in the state system meant that he had to satisfy the cause and prejudice test before having access to federal collateral review. *See Teague,* 489 U.S. at 298, 109 S.Ct. at 1068. Because petitioner failed to meet this test, the Court refused to address the merits of petitioner's claim. *See id.* at 299, 109 S.Ct. at 1069. Mr. Holmes has made no showing of cause for the procedural default or resulting prejudice. Accordingly, petitioner's improper in-court identification and Second Circuit brief claims are procedurally barred.

It is worth noting the somewhat anomalous nature of this result. As directed by the Supreme Court and the Second Circuit, a federal court adjudicating an exhaustion issue must divine whether state procedural rules bar a claim, and thus make recourse to state proceedings futile. If a claim is barred under state procedural rules, the petitioner has no recourse to federal collateral relief under the adequate and independent state grounds doctrine absent a showing of cause and prejudice. Thus, a federal tribunal gives with one hand and takes

---

**2.** For a discussion of whether a state procedural rule is adequate and independent, see Jason M. Halper, Harris v. Reed: *A New Look at Federal Habeas Jurisdiction over State Petitioners,* 58

Ford.L.Rev. 493, 504–05 & nn. 95–104 (1989). The Second Circuit has construed NYCPL § 440.10(2)(c) as an adequate and independent state ground. *See Grey,* 933 F.2d at 120–21.

with the other: The state petitioner has the possibility of access to a federal court due to exhaustion, but has no actual access to a federal court because of the existence of an adequate and independent state ground. As Chief Judge Oakes has noted, "[w]hat a marvelous Catch–22 the law of federal habeas corpus now is!" *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir.1991) (Oakes, C.J., concurring).[3]

Also disturbing is that the *Teague* analysis omits consideration of the rationale underlying the Supreme Court's decision in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).[4] In *Harris*, the Supreme Court addressed the situation in which a state court determines that a defendant's claim is procedurally barred but then goes on to address the merits of the constitutional claim. In such a scenario, the Court found that a federal court may reach the merits of petitioner's claim unless the state court makes a "plain statement" that its decision is based on state procedural rules rather than on federal constitutional grounds. *See id.*, 489 U.S. at 263, 109 S.Ct. at 1043. The Court also noted that "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Id.* at 263 n. 9, 109 S.Ct. at 1043 n. 9.

Thus, the *Harris* Court tacitly distinguished between the effect of a state procedural default in the exhaustion and jurisdictional contexts. While a procedural default can automatically mean that petitioner has satisfied the exhaustion requirement, under *Harris* it does not automatically constitute an adequate and independent state ground that bars petitioner from federal court. Under *Teague* and the Second Circuit's decision in *Grey*, however, a procedural default has just such a presumptively preclusive effect on federal collateral jurisdiction. It is possible to formulate a rule that resolves the tension between *Harris* and *Teague* by focusing on *Harris'* underlying rationale. In prohibiting the exercise of federal jurisdiction when a state court expressly relies on a state ground for decision, the *Harris* Court attempted to protect principles of comity, promote the finality of state criminal judgments, and demonstrate respect for state procedural rules without wasting scarce judicial resources. *See Harris*, 489 U.S. at 264–65 & n. 10, 109 S.Ct. at 1044 & n. 10. In the absence of such a plain statement, however, "it would be more intrusive for a federal court to second-guess a state court's determination of state law." *Id.* at 264, 109 S.Ct. at 1044. In other words, when a decision is ambiguous, exercising jurisdiction furthers the interests of federalism and comity. This rationale does not lose puissance when a state court never had an opportunity to address the claim.

Consistent with *Harris*, a federal habeas court confronted with claims that, although never presented in a state forum, are barred due to a procedural default, could exercise jurisdiction and review the merits of a petitioner's claim. Such a rule resolves the tension between *Harris* and *Teague*. Moreover, it demonstrates respect for state courts because it avoids burdening them with clearly defaulted claims. In addition, a state criminal defendant is not penalized by receiving an empty benefit—automatic exhaustion—at the price of incurring a certain detriment—lack of access to federal collateral review.[5]

**3.** Judge Oakes was the Chief Judge of this Circuit at the time he concurred in *Gonzalez*. He made this comment based on the state of the law in this area, which now provides that "as long as the state courts approve, a conviction will more often than not be immune from federal court scrutiny, even where federal constitutional rights have clearly been violated." *Gonzalez*, 934 F.2d at 425 (Oakes, C.J., concurring). Mr. Holmes' situation represents the logical evolution of Supreme Court precedent in the area of federal habeas jurisdiction. In this case, even absent state court approval, this court may not review two of Mr. Holmes' claims absent a showing of cause and prejudice.

**4.** The *Teague* Court noted, without analysis, that the plain statement rule of *Harris v. Reed* was inapplicable where the state court never had an opportunity to address the claim. *See Teague*, 489 U.S. at 299, 109 S.Ct. at 1069.

**5.** An alternative rule also resolves the tension between *Harris* and *Teague*. When confronted with a claim that has never been presented in a state forum, but that is barred from state courts

Nonetheless, as previously noted, the Court's decision in *Teague* bars federal review of the petitioner's defaulted claims absent a showing of cause for the procedural default and resulting prejudice. Petitioner has failed to demonstrate either cause or prejudice for failing to present his improper identification and Second Circuit brief claims to the state courts. Accordingly, these claims are denied.

C. Abuse of the Writ: Claims Based on Denial of Speedy Trial, the Prosecutor's Second Circuit Brief and Ineffective Assistance of Counsel

Even assuming that the adequate and independent state grounds doctrine does not preclude a federal habeas court from reaching the merits of Mr. Holmes' claims, several of his claims are not susceptible to federal review due to petitioner's abuse of the writ. These claims are ineffective assistance of appellate counsel, denial of a speedy trial, and the Second Circuit brief claim. Petitioner is entitled to federal habeas review of claims contained in a second or successive habeas petition only in the limited circumstances enunciated in 28 U.S.C. § 2244, Rule 9(b) of the Rules Governing Habeas Corpus Proceedings (the "Rules"), and *McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

 Pursuant to Title 28, United States Code, Section 2244(b), a federal court may refuse to entertain a second or subsequent application for federal habeas relief unless the petition alleges a new ground and the petitioner did not deliberately withhold this new ground or "otherwise abuse the writ." Expanding on this concept, Rule 9(b) provides that

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits [6] or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

28 U.S.C. § 2244 Rule 9(b). This Rule seeks to promote the finality of state court adjudications and also acknowledges the costs imposed by federal collateral review of state convictions. *See Sawyer v. Whitley*, — U.S. —, —, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). In *Zant*, the Court set forth a framework for analyzing whether a successive application for federal collateral relief that raises new and different grounds constitutes an abuse of the writ. Upon the filing of a second or subsequent habeas petition, the Government bears the burden of pleading abuse of the writ. "The government satisfies this burden if, with clarity, and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ." *Zant*, — U.S. at —, 111 S.Ct. at 1470. The burden then shifts to defendant to demonstrate either cause for the failure to raise the claim and resulting prejudice, or that a fundamental miscarriage of justice will result from refusal to entertain the petition. The Court added that an evidentiary hearing is not required where a district court determines as a matter of law that petitioner cannot satisfy the standard. *See id.* Where a successive petition contains claims not raised in all prior petitions, these novel or abandoned claims must be denied due to abuse of the writ. *See, e.g.,*

under state procedural rules, an alternative rule could compel all cases to come within the ambit of *Harris* by eliminating the implied exhaustion rule. This is achieved by forcing a state criminal defendant actually to present all claims in a state forum before the claims are exhausted. In this way, a state court will either clearly rely on a state ground or it will render an ambiguous decision; in either case, a federal habeas court's ability to exercise jurisdiction is governed by *Harris*. Such a rule resolves the tension between *Harris* and *Teague*, and also demonstrates respect both for state procedural rules and the

right of states to have the first opportunity to adjudicate the claims of state criminals. Unfortunately, this rule also forces state courts to address, at least in cursory fashion, clearly defaulted claims.

6. The Supreme Court has noted that "should doubts arise ... as to whether two grounds are different or the same, they should be resolved in favor of the applicant." *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963).

*Strauch v. Keane*, 801 F.Supp. 1271, 1274–75 (S.D.N.Y.1992).

■ Applying the *Zant* analysis in this case yields a clear conclusion: Petitioner has abused the writ by raising claims in this third habeas petition that were not raised in both prior applications, and thus, these claims are denied. Under *Zant,* the Government must set forth petitioner's prior writ history, identify first-time claims, and allege abuse of the writ. The D.A. has sustained this burden. In its memorandum of law, the D.A. has detailed petitioner's extensive federal habeas history, which is noted above, and also has indicated that both prior applications for federal collateral relief were denied because they contained unexhausted claims. In addition, the D.A. has identified claims not presented in both prior federal applications: ineffective assistance of counsel, denial of a speedy trial, and the Second Circuit brief claim. Finally, the D.A. has alleged with particularity that this situation constitutes an abuse of the writ.

■ The burden shifts to petitioner, then, either to satisfy the cause and prejudice standard or to demonstrate that denial of the petition without a review on the merits will produce a fundamental miscarriage of justice. Petitioner fails to meet either standard. Cause implies that " 'some objective factor external to the defense impeded counsel's efforts to raise the claim in state court.' " *Zant,* —— U.S. at ——, 111 S.Ct. at 1470 (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). External factors include ineffective assistance of counsel, interference by state officials that makes compliance with state rules impracticable, or a showing that the factual or legal basis for the claim was not reasonably available to counsel. *See id.; Carrier,* 477 U.S. at 486–88, 106 S.Ct. at 2644–45.

Petitioner cannot demonstrate cause. Mr. Holmes raised his claim based on denial of a speedy trial on direct appeal, and he presented his ineffective assistance of counsel claim to the Appellate Division in the form of a request for state collateral relief. Moreover, due to the nature of the claims, it is apparent that they rest on facts that were available to petitioner when he filed his first federal habeas application. *See, e.g., Chapple v. Mann,* No. 90 Civ. 3937, 1991 U.S. Dist. LEXIS 18267, at *6–*7 (S.D.N.Y. Dec. 10, 1991) (petitioner knew of factual basis for ineffective counsel claim, as evidenced by petition for state collateral review based upon this ground). Thus, while petitioner could have raised these claims in his first habeas petition, he simply omitted to do so. Accordingly, petitioner has abused the writ. Because Mr. Holmes cannot show cause or prejudice for such abuse, his claims based on ineffective assistance of counsel and denial of a speedy trial must be denied.

Petitioner did not raise the Second Circuit brief claim in his first federal petition; rather, this claim appears in his second and third petitions. The Second Circuit brief claim is based on Mr. Holmes' allegation that the prosecutor presented evidence at trial that Mr. Cunningham's confession was false, while in a brief to the Second Circuit in a matter concerning Mr. Gale, he allegedly stated that the confession was true. The Second Circuit proceeding was decided in 1978. Petitioner's first federal habeas petition was filed in 1981. Thus, although the factual predicate for petitioner's claim existed at the time he filed his first federal habeas petition, he did not raise the claim in this first petition. Accordingly, absent a showing of cause and prejudice, petitioner has abused the writ in raising this claim in subsequent petitions. Because petitioner has not demonstrated cause or prejudice, his Second Circuit brief claim is rejected.[7]

Moreover, petitioner has not proffered a colorable basis for finding actual innocence. To demonstrate actual innocence, a prisoner must show

> " 'a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with

---

7. This claim is also not reviewable on the merits because of petitioner's procedural default. *See*

*supra* at 555–556.

due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.'"

*Kuhlmann v. Wilson,* 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986) (quoting Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 160 (1970)); *see Sawyer v. Whitley,* — U.S. —, — – —, 112 S.Ct. 2514, 2519–2522, 120 L.Ed.2d 269 (1992). Petitioner has not demonstrated that in light of all the evidence, including evidence that was wrongfully admitted or suppressed, a reasonable finder of fact would have entertained a reasonable doubt as to petitioner's guilt.

## D. Merits Review

While four of the five claims contained in petitioner's application are denied without a review of the merits, it should be noted that, for the reasons discussed below, these four claims also lack merit. The fifth claim, however—that the trial court erred in restricting defense counsel's cross-examination of Detective Farrell—is entitled to a review on the merits. Accordingly, this claim is referred to Magistrate Judge Roberts, who will conduct such a review.

### 1. Second Circuit Brief Claim

■■■ Petitioner asserts that the prosecutor made statements in a Second Circuit brief, in connection with a proceeding involving Mr. Gale, that supported the veracity of Mr. Cunningham's confession. This new support for the truth of the confession supposedly undermines the legitimacy of Mr. Holmes' conviction and entitles him to collateral relief. Petitioner's argument fails, however, because the relevant statements are only argumentative in nature. In an affidavit submitted to this Court, the D.A. notes that "the brief submitted merely examined the probable effect of Cunningham's statements, 'if believed' or 'had they been given credence by the jury.'" *Affidavit of Billie Manning, Assistant District Attorney, Bronx County,* at 11.

This Court's perusal of the brief reveals that, far from asserting the validity of the confession, the D.A. merely engaged in an alternative analysis to demonstrate that, even if believed, the confession would not have changed the jury's verdict. The brief concluded that "[i]n view of the overwhelming proof of guilt, it is inconceivable that the admission of Cunningham's statements could have altered the jury's verdict." *Id.,* Exhibit 2, at 21. Accordingly, petitioner's Second Circuit brief claim is meritless.

### 2. Denial of Effective Assistance of Appellate Counsel

■■■ Mr. Holmes also claims that he received ineffective assistance of appellate counsel. He bases this claim on counsel's alleged failure to advocate on appeal two of the grounds contained in this petition for collateral relief: improper in-court identifications and denial of a speedy trial.

To establish that an attorney provided ineffective assistance, a petitioner must show both that counsel's performance was deficient and that this deficient performance resulted in prejudice to petitioner. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990); *United States v. Reiter,* 897 F.2d 639, 645 (2d Cir.), *cert. denied,* 498 U.S. 817, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990); *United States v. Nersesian,* 824 F.2d 1294, 1320–21 (2d Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). Failure to prove both elements of this test—deficient performance and prejudice—results in dismissal of a petition for habeas corpus based upon ineffective assistance of counsel. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069; *Nersesian,* 824 F.2d at 1321.

Performance is deficient if, viewed at the time of the conduct and in light of surrounding circumstances, counsel's performance falls below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 688, 690, 104 S.Ct. at 2065, 2066. Due to the difficulties inherent in an analysis that requires adopting counsel's perspective and then rendering an after-the-fact assess-

ment of performance, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065; *see Aguirre*, 912 F.2d at 560. Prejudice exists where "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068.

Mr. Holmes' appellate counsel submitted a fifty-two page brief to the Appellate Division that raised several grounds for reversal. Counsel attacked the evidence as insufficient to sustain the conviction, protested the restrictive cross-examination of Detective Farrell, and challenged the constitutionality of a New York law concerning jury selection. Counsel expressed these arguments cogently and explored them thoroughly. Although counsel did not raise every conceivable claim, the Supreme Court has held that failure to raise every colorable argument does not constitute ineffective assistance of counsel: "A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular'—in a verbal mound made up of strong and weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983) (quoting John W. Davis, *The Argument of an Appeal*, 26 A.B.A.J. 895, 897 (1940)). In light of counsel's papers, petitioner's conclusory allegations of incompetence are unavailing.

### 3. The Improper In–Court Identifications

■ Petitioner claims that the trial court should have suppressed the in-court identifications of defendant by two eyewitnesses. One eyewitness, Ms. Krupp, picked out petitioner's picture after viewing approximately 500 photographs; another witness, Ms. Hochberg, independently selected petitioner's picture after viewing approximately 75 photographs. Out of the presence of petitioner's counsel and one another, Ms. Krupp and Ms. Hochberg identified petitioner in a lineup. The trial judge suppressed the lineup identification because petitioner's counsel was not present at the post-indictment lineup. *See Gilbert v. California*, 388 U.S. 263, 273, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178 (1967); *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967). Nevertheless, the judge permitted Ms. Hochberg and Ms. Krupp to identify petitioner at trial based on his finding that the witnesses possessed an independent basis for the identification.

■ This ruling was proper. A witness' in-court identification of a defendant is admissible, even if a lineup identification must be suppressed, if the witness had an independent origin for the in-court identification, untainted by the uncounselled lineup. *See Wade*, 388 U.S. at 239–41, 87 S.Ct. at 1938–40; *Meadows v. Kuhlmann*, 812 F.2d 72, 76 (2d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). The state trial court found such an independent basis, and this factual finding is presumed correct. *See* 28 U.S.C. § 2254(d); *Kuhlmann v. Wilson*, 477 U.S. 436, 459, 106 S.Ct. 2616, 2630, 91 L.Ed.2d 364 (1986). Moreover, the circumstances surrounding the identification support a finding that the witnesses possessed an independent basis for their identifications. Both Ms. Hochberg and Ms. Krupp had an unobstructed, close-up view of Mr. Holmes as he committed the charged offenses in a well-lit office. In addition, both witnesses selected petitioner's photograph from among the large number they viewed, further indicating an independent source for the in-court identification. Accordingly, petitioner's argument is without merit.

### 4. Denial of a Speedy Trial

■ Mr. Holmes also contends that, as to his first trial, he did not receive a speedy trial as required by the Sixth Amendment. He asserts that he was incarcerated from September 20, 1968 until January 5, 1970 without having been arraigned. The D.A. counters that this claim fails to raise a constitutional issue because it is based on

delayed arraignment, not on a delay in commencing trial. The D.A. further avers that any delay is attributable to petitioner's refusal to be arraigned.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court articulated a four-factor test for assessing alleged violations of a criminal defendant's Sixth Amendment right to a speedy trial. These factors are: (1) the length of the delay; (2) the reasons for the delay; (3) whether or not the defendant asserted his right; and (4) prejudice to the defendant. *See id.* at 530–33, 92 S.Ct. at 2192–93. No single factor possesses "talismanic effect," nor is any one factor a "necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial." *Id.* at 533, 92 S.Ct. at 2193.

In this case, the length of delay, eighteen months, was considerably shorter than the delays in other cases where courts found no Sixth Amendment violation. *See, e.g., United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir.1990) (delay of twenty-four months is considerably shorter than in cases finding no Sixth Amendment violation); *Flowers v. Warden*, 853 F.2d 131, 134 (2d Cir.) (no Sixth Amendment violation where sole reason for seventeen month delay in processing defendant's case was court docket congestion), *cert. denied*, 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir.1980) (same principle). Moreover, although the cause of delay is uncertain, nothing in the record suggests that the State of New York intended to delay the trial in this case or that the prosecutor obtained any strategic advantage from the delay. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. In addition, Mr. Holmes did not assert his right to a speedy trial until the eve of his second trial. "Although the failure to assert the right does not act as a waiver, such failure will make it difficult for a defendant to assert his right successfully at some later point in time." *Rayborn v. Scully*, 858 F.2d 84, 92 (2d Cir.1988), *cert. denied*, 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989); *see also Barker*, 407 U.S. at 528, 534, 92 S.Ct. at 2191, 2194. Finally, petitioner has not presented any evidence that the delay in commencing his first trial prejudiced his defense. *See Rayborn*, 858 F.2d at 93; *see also United States v. Blanco*, 861 F.2d 773, 780 (2d Cir.1988) ("[S]ince delay can just as easily hurt the government's case, [petitioner's] general claim that the delay impaired her defense also lacks force."), *cert. denied*, 489 U.S. 1019, 109 S.Ct. 1139, 103 L.Ed.2d 200 (1989). In fact, Mr. Holmes has not provided any basis for finding that any of the *Barker* factors should be construed in his favor; petitioner has not even cited the Court's decision in *Barker*. Given that Mr. Holmes successfully had his first conviction overturned, it is difficult to perceive how any delay associated with this first proceeding could constitute prejudice that affected his second trial. *See Rayborn*, 858 F.2d at 94 ("[C]ourts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice.").

### 5. *Restrictive Cross–Examination*

██ Mr. Holmes asserts that the trial court erred in restricting his counsel's ability to cross-examine Detective Farrell. Petitioner is entitled to review on the merits of this claim. Mr. Holmes has raised this issue on direct appeal and in all three habeas petitions. Thus, it is exhausted and not subject to dismissal due to abuse of the writ. Moreover, he never received a review on the merits of this claim because his prior two petitions were dismissed as "mixed petitions" due to the supposed presence of unexhausted claims. This claim, therefore, is not susceptible to dismissal under 28 U.S.C. § 2244(b) and Rule 9(b).

### *Conclusion*

For the reasons stated above, the claims in Mr. Holmes' petition for a writ of habeas corpus—the Second Circuit brief claim, as well as those claims based upon allegedly impermissible in-court identifications, denial of a speedy trial, and ineffective assistance of counsel—are DENIED. The petition is referred to Magistrate Judge Roberts to assess the merits of the sole potentially viable ground in this petition—that

the trial court erred in restricting the cross-examination of Detective Farrell.

SO ORDERED.